UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:11-CV-552

NATHANIEL STANLEY   Plaintiff,

v.

CENTRAL KENTUCKY COMMUNITY
ACTION COUNCIL, INC.   Defendant.

# MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion to Alter or Amend this Court's Judgment of June 27, 2013, pursuant to Federal Rule of Civil Procedure 59. (Docket No. 36.) Defendants have responded (Docket No. 39), and this matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Motion to Alter or Amend is DENIED.

# BACKGROUND

The factual and procedural underpinnings of this case are more fully described in the Court's Memorandum Opinion of June 27, 2013. (Docket No. 34). Still, the Court recounts the relevant facts in order to address the parties' arguments. Because the Court reviews Plaintiff's legal claims in the context of Defendant's summary judgment motion, the facts are presented in the light most favorable to Plaintiff.

**A. Factual background**

Plaintiff, Nathaniel Stanley ("Plaintiff" or "Stanley"), an African-American male, worked as an employment specialist for Defendant, the Central Kentucky Community Action Council, Inc. ("Defendant" or "the Council"). Over the course of Stanley's employment, from March 2008 until his termination in July 2010, he experienced a number of problems with his

supervisor, Tracy Dennison. Stanley accused Dennison of making demeaning comments "about her husband and men in general," although he admitted that the comments were never about him. (Stanley Dep. 18:12, Sept. 10, 2012, Docket No. 14-1: *Id.* at 22:19-23:5.) Stanley perceived Dennison to be abrasive and disrespectful in her interactions with him. (*Id.* at 24:23-26:5.)

Beginning in February 2009, Stanley levied a series of documented complaints about Dennison. In response to an email exchange about the proper procedure for submitting certain information to Dennison, Stanley's initial complaint noted that he felt he was being singled out, as Dennison had said nothing to the other employment specialists. He further accused Dennison of general unpleasantness and a poor management style. (Defs.' Ex. 2, Docket No. 13-3.)

On July 31, 2009, Dennison issued a written reprimand to Stanley for his behavior at a personnel meeting. (Defs.' Ex. 3, Docket No. 13-4.) Stanley was in no way disciplined as a result of the written reprimand, although he was advised that continued disruptions would result in his immediate dismissal. (*Id.*) On August 5, 2009, Stanley emailed Human Resource Director Denise Fogle, indicating that he continued to have problems with Dennison. (Defs.' Ex. 6, Docket No. 13-7.) Stanley reiterated his complaints that Dennison was abrasive and demeaning and inappropriately scrutinized Stanley's work. Fogle shared Stanley's complaints with Community Services Director Lynne Robey and Executive Director Thomas Moorman. (*See* Robey Aff. Attach. 1, 2, Docket No. 13-8; Moorman Dep. 25:8-10, Aug. 9, 2012, Docket No. 13-10.) In response, Moorman attempted to schedule a meeting addressing Stanley's concerns. (Defs.' Ex. 8, DN 13-9.) Although the parties "went back and forth" about possible dates to discuss Stanley's complaints, the meeting ultimately never occurred.

From late September 2009 through mid-February 2010, Stanley continued to draft complaints to Fogle. He alleged, for example, that Dennison monitored the time that Stanley left

work for the day and asked him to rearrange his office without requiring others to do so. (Defs.' Ex. 11, Docket No 13-12.) After recounting a series of perceived slights by Dennison, Stanley noted that "Tracy does not even seem to have any respect for any 'employees of color'" and displayed a "total disregard for minority staff members that are in positions of authority." He also told Fogle that he was tired of the constant harassment.

Finally, in a February 13, 2010 communication, Stanley alleged, among other complaints, that Dennison gave him, but not other employment specialists, an annual evaluation. He contended that "[i]f [Dennison] is making an attempt to evaluate her personnel, she needs to . . . hold all seven employment specialist [sic] accountable for this, and not just the 'lone black male employee' that she obviously has disdain for." (Defs. Ex. 13, Docket No. 13-14.)

On April 16, 2010, Stanley met with Dennison, Moorman, Robey, and Fogle following his failure to immediately report a client's threat on a case manager's life. (Stanley Dep. 133:13-135:3.) During the meeting, Stanley was informed that his delay was grounds for termination, but because there was no set reporting procedure, he received only a verbal reprimand. (Stanley Dep. 133:13-135:3.) A few days following this meeting, Dennison and Stanley exchanged a series of emails concerning proper procedures for requesting and recording personal leave. (Defs.' Ex. 19, Docket No. 13-20.)

On May 5, 2010, Stanley filed his first EEOC charge, alleging that he was subjected to different terms and conditions of employment, disciplined, denied promotion, and retaliated against because of his sex and his complaints of sex discrimination. (May 5, 2010, EEOC Charge of Discrimination, Docket No. 14-4.) Moorman ordered an investigation upon learning of Stanley's complaint. (Moorman Dep. 31:19-21.) Thereafter, Robey met with Stanley;

Dennison; Council employees Cindy Milby and Cheryl Freeman; and Freeman's assistant, Sharron Perry, about "the friction in the Hardin County office." (Robey Aff. Attach. 1, 6.)

Two months later, Stanley's coworker Cindy Milby informed Dennison that Stanley had been making "vulgar" statements about Dennison at work. (Dennison Dep. 18:1-8, Docket No. 14-3.) Because the allegations concerned comments about her, Dennison directed Milby to speak with Robey. (*Id.* 26:16-22.) Robey asked Milby to put her allegations in writing. (Robey Aff., Attach. 1, 7.) Milby's written statement alleged that Stanley made a variety of vulgar statements about Dennison and indicated that Cheryl Freeman had also overheard his comments.[1] (Milby Statement, Defs.' Ex. 26, Docket No. 13-27.) On July 23, 2010, Milby's statement was incorporated into a sworn affidavit. (Defs.' Ex. 27, Docket No. 13-28.) Robey presented the affidavit to Executive Director Moorman. On July 23, 2010, Moorman drafted a termination letter that was not executed or provided to Stanley. (Pls.' Ex. 9, Docket No. 14-10.)

On July 27, 2010, Moorman, Fogle, Robey, and Robey's assistant, Ellen Leake, interviewed Cheryl Freeman. Freeman confirmed that, like many in the office, Stanley had called Dennison a "bitch." (Freeman Dep. Aug. 9, 2012, 14:13-17, Docket No. 14-13.) She also confirmed overhearing Stanley comment that Dennison was likely the man of the house and that "if she'd get her some, she'd calm down." (*Id.*; Freeman Sworn Statement, July 17, 2011, 27:11-12, Docket No. 13-29.) Based on this confirmation, Moorman drafted a modified termination letter on July 27, 2010. (Pls.' Ex. 10, Docket No. 14-10.) Stanley was terminated on July 29, 2010.

---

[1] Specifically, Milby alleged that Stanley made the following statements in her presence: "I wish her husband would give her some so she would get off my F---ing ass"; "All she needs is her guts pocked [sic] real good"; "She could craw [sic] up under my desk and I could shut her up"; "I bet she acts like the man instead of her husband"; "I can give her 13 inches & shut her F---ing mouth"; and "That Bitch [sic] doesn't know who she is F---ing with & she is going to cost this Company a lot of money. I'm not F---ing scared of her[;] hell I have been in two F---ing wars. Hell I'm an old man[;] they can just pay me and I'll go sit home for all her stupid shit." Stanley denies making these statements and attributes many of them to Milby herself. (Stanley Dep. 158:17-162:3.)

4

On January 21, 2011, Stanley filed a second complaint with the EEOC alleging discharge in retaliation for his discrimination complaints and prior charge with the EEOC. On July 7, 2011, the EEOC dismissed Stanley's charges and issued him a right to sue letter. On October 4, 2011, Stanley brought suit in this Court. The Council moved for summary judgment shortly thereafter.

**B. The Court's prior ruling**

In this lawsuit, Stanley alleges that Dennison "repeatedly and continually harassed, insulted, increasing surveilled [sic], discriminated against, wrongfully disciplined, critically scrutinized Plaintiff's work, and provided false information about Plaintiff" in violation of both Title VII of the Civil Rights Act of 1964 ("Title VII") (42 U.S.C. § 2000e *et seq.*) and the Kentucky Civil Rights Act ("KCRA") (Ky Rev. Stat. § 344.010 *et seq.*) (Pl.'s Compl. ¶ 12.) Stanley also alleges that he was subject to a hostile work environment in violation of Title VII. The Court granted summary judgment in favor of Defendants on these counts, noting that Stanley generally believed that Dennison patronized her "subordinates" and that she lacked respect for him and his fellow "employees of color," who were all women. Further, Stanley offered no evidence to show that any differential treatment he experienced was based on his gender. Stanley does not move the Court to reconsider its judgment as to these allegations.

Stanley further argued that "the temporal proximity between Defendant's knowledge of [his] EEOC complaint and the adverse action was sufficient to establish a *prima facie* case for retaliation." (Docket No. 14 at 7.) He now moves the Court to reconsider its judgment in favor of the Council regarding this claim.

To establish a claim for retaliation, Stanley must demonstrate that (1) he engaged in an activity protected by Title VII or the Kentucky Civil Rights Act; (2) this exercise of protected

rights was known to Defendant; (3) Defendant thereafter took a materially adverse employment action against Stanley, or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000) (citations omitted). To establish the requisite causal connection, a plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009).

The Court rejected Stanley's contention based on the principles articulated in *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008). *Mickey* acknowledges that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Id.* at 525. However, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.*

The Court determined that in Stanley's case, temporal proximity alone was not sufficiently significant as to establish a causal connection between Stanley's EEOC Complaint, filed May 5, 2010, and his termination nearly three months later on July 29, 2010. The Court rejected Stanley's suggestion that his was the type of immediate retaliation contemplated under Sixth Circuit precedent.

The Court further held that even if Stanley had satisfied his prima facie burden, the Council offered a legitimate, non-discriminatory reason for his termination, as a coworker accused Stanley of inappropriate, sexually suggestive comments about his supervisor.

Furthermore, to establish pretext, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) (Citing *Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1109 (8th Cir. 1994)), overruled on other grounds by *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009). The plaintiff must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the action], or (3) that they were insufficient to motivate [the action]." *Id.* at 1084 (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993)). Because Stanley failed to make this showing, his retaliation claim failed. Furthermore, Stanley offered no evidence that the Council did not "'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Accordingly, the Court determined that the Council was entitled to summary judgment on Stanley's retaliation claim.

**STANDARD**

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). Although the Federal Rules of Civil Procedure do not provide expressly for "motions for reconsideration," courts generally construe such motions as motions to alter or amend a judgment under Rule 59(e). *E.g.*, *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F. 2d 201, 206 (6th Cir. 1990); *Taylor v. Colo. State Univ.*, 2013 WL 1563233, at *8-9 (W.D. Ky. Apr. 12, 2013).

The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301

F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted). "It is not the function of a motion to reconsider arguments already considered and rejected by the court." *Id.* (citation omitted). As another district court in this Circuit put it, "Where a party views the law in a light contrary to that of this Court, its proper recourse is not by way of a motion for reconsideration but appeal to the Sixth Circuit." *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 2836788, at *1 (N.D. Ohio July 20, 2010) (internal quotation marks and citations omitted). Accordingly, the Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Furthermore, because there is an interest in the finality of a decision, this Court and other district courts have held that "[s]uch motions are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)); *accord Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).

## DISCUSSION

Stanley now asks the Court to reconsider its decision, moving specifically that the Court alter its judgment regarding his retaliation claim. (Docket No. 36 at 1.) Stanley was terminated less than three months after he filed the EEOC Complaint. He contends that the Court

erroneously applied *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), arguing that although *Mickey* requires an employee to "couple temporal proximity with other evidence of retaliatory conduct to establish causality," *id.* at 525, it does not explicitly define "some time." (Docket No. 36 at 1.) . Stanley argues that three months has been held to be "significant enough to constitute sufficient evidence of a causal connection for the purpose of satisfying [the plaintiff's] burden of demonstrating a prima facie case." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004).

Having considered Stanley's argument, the Court declines to amend its judgment as to this point. Although *Singfield* confirmed that a three-month period *may* raise an inference of a retaliatory motive, a court analyzing a temporal proximity case must "look[] at the totality of the circumstances to determine whether an inference of retaliatory motive could be drawn." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010). Generally, temporal proximity cannot, standing alone, establish a causal connection between a protected act and an adverse event. Had Stanley's termination "so closely follow[ed] the protected activity that there would be no other evidence to couple with the temporal proximity," the three-month period may have been sufficient. *Wasek v. Arrow Energy Sevs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (citing *Mickey v. Zeidler Tool & Die Co.*, 682 F.3d 463, 472 (6th Cir. 2008)). However, while Stanley's termination was in close proximity, it was not "extremely close." *Vereecke*, 609 F.3d at 401. Therefore, Stanley must produce additional evidence for his retaliation claim to survive.

In an apparent effort to produce such evidence, Stanley argues that his temporal proximity argument is buttressed by the Defendants' conduct. Specifically, he questions the gap between his alleged inappropriate comments of November 2009 and Milby's affidavit of July 13, 2010. He contends that a jury could determine that Milby's assertions, coupled with the three-

month period between the EEOC complaint and the adverse employment decision, were made only to retaliate against him. (Docket No. 36 at 2.) Stanley, however, raised no such allegations in his earlier filings. A Rule 59 motion should not be used to reargue a case on the merits. "Rule 59(e) motions cannot be sued to present new arguments that could have been raised prior to judgment." *Howard v. U.S.*, 553 F.3d 472, 475 (6th Cir. 2008).

Furthermore, Stanley argues that the Council knew of the behavior at issue long before he was terminated. He says that the only disciplinary action initiated against him was the July 2009 written reprimand, after which he received excellent performance reviews. Had his actions warranted disciplinary action prior to July 2010, he would have been so disciplined. However, no evidence suggests that the Council knew of Stanley's inappropriate comments prior before Milby's July 2010 report. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). *See also Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996) ("[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment."), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In reaching its previous decision, the Court followed these principles. If Stanley contends that the Court did not, his argument is one to make on appeal, not in the instant action.

## CONCLUSION

Stanley has requested that the Court reconsider its prior ruling (Docket No. 35), in which the Court granted summary judgment in favor of the Council. For the foregoing reasons, IT IS

HEREBY ORDERED that the Plaintiff's Motion to Alter or Amend the Judgment entered herein on June 27, 2013 is DENIED.